### 33955. BARRETT-WALLS, INC. v. T. V. VENTURE, INC. et al.

BOWLES, Justice.

This appeal is from an order of Walton Superior Court, denying appellant injunctive relief against appellee under a non-competitive covenant of a distributorship agreement, the court finding that the covenant was unenforceable on public policy grounds.

The trial court found that on November 2, 1976, T. V. Tempo, Inc., a corporation which published and distributed a free weekly publication containing advertising and television schedules, granted to Barrett-Walls, Inc. a distributorship with the right to sell associate publisher franchises throughout the United States, except for Virginia and the District of Columbia. Fred Barrett and Sylvia Walls each owned 50 per cent of the stock in Barrett-Walls, Inc. Each also owned 50 per

cent of the stock in Tempo Advertising, Ltd. which name was later changed to T. V. Venture, Inc.

The distributorship agreement between T. V. Tempo, Inc. and Barrett-Walls, Inc. contained a non-competitve provision which provided: "10(a) Neither party hereto nor any principal of either nor any assignee, shall enter into or associate with in any manner, or have any financial or other interest, in any other publication providing television scheduling in conjunction with advertising during the term and time of this Agreement anywhere in the United States, which is the area covered by the subject matter of this Agreement."

On April 1, 1977, a division agreement was entered into between Barrett-Walls, Inc. and Tempo Advertising, Ltd., which provided that Barrett would own 100 per cent of the stock in Tempo Advertising, Ltd. and Sylvia Walls would own 100 per cent of the stock in Barrett-Walls, Inc. The division agreement also provided that the T. V. Tempo, Inc. distributorship would be divided between Barrett-Walls and Tempo Advertising, Ltd.

On February 3, 1978, T. V. Tempo, Inc. and Tempo Advertising, Ltd. entered into a termination agreement whereby T. V. Tempo, Inc. bought back from Tempo Advertising, Ltd. all rights owned by it under the November 2, 1976, distributorship agreement. By the express terms of the termination agreement T. V. Tempo, Inc. did not assume any obligations arising out of the association between Tempo Advertising, Ltd. and Barrett-Walls, Inc. After the execution of this termination agreement, Tempo Advertising, Ltd. amended its articles of incorporation and changed its name to T. V. Venture, Inc. It then began producing a free publication called T. V. Venture which contained advertising and television schedules.

Barrett-Walls, Inc. filed a petition for injunctive relief against T. V. Venture, Inc. alleging that T. V. Venture, Inc. had made no valid assignment of its co-distributorship interest; that both T. V. Venture, Inc. and Fred Barrett were bound by the non-competitive covenant contained in paragraph 10(a) of the distributorship agreement, and that both were in violation of the noncompetitive clause. Appellant asked

for the sum of $25,000 general and compensatory damages plus $50,000 punitive damages.

The trial court, after hearing evidence on appellant's complaint concluded that appellees were bound by the non-competitve clause of the distributorship agreement, which was incorporated by reference into the division agreement and that T. V. Venture, Inc. was not released from its responsibilities thereunder by the February 3, 1978 termination agreement. However, the court held that the restrictive covenant was unenforceable on public policy grounds because it was unlimited in time, it was unreasonable in its territorial restrictions, and it was unreasonable in the nature of the business activities proscribed. We affirm.

We agree with the trial court's finding that the non-competitive clause in section 10(a) of the distributorship agreement was incorporated by reference into the division agreement which provided: "All terms and conditions of the Distributorship Agreement, Schedule 'A' dated November 12, 1976 between Barrett-Walls, Inc. and T. V. Tempo, Inc. shall be binding on each distributor, Barrett-Walls, Inc. and Tempo Advertising, Ltd. All rights, obligations and covenants shall enure to the benefits of each."

The termination agreement executed between T. V. Tempo, Inc. and Tempo Advertising, Ltd. whereby T. V. Tempo, Inc. purported to release Tempo Advertising, Ltd. from all non-competitive clauses had no effect on the division agreement between Barrett-Walls, Inc. and Tempo Advertising, Ltd. T. V. Tempo. Inc. was not a party to the division agreement and had no authority to release a party under the terms of that agreement. Therefore, we conclude that appellees were bound by the non-competitive provisions in section 10(a) of the distributorship agreement which was incorporated by reference into the division agreement.

The contractual restraints sought to be enforced in this suit are those tending to lessen competition and are disfavored. Code Ann. §§ 2-2701 and 20-504. Non-competitive provisions in contracts will be enforced only if the restraints are reasonable in time, reasonable and definite in territorial extent, and reasonable and

definite in the nature of the business activities proscribed. *Britt v. Davis,* 239 Ga. 747 (238 SE2d 881) (1978) and cits.

Paragraph 10(a) of the distributorship agreement provides for the non-competitive restraint to apply to either party and their assigns for the duration of the agreement, the initial term of which is fifteen years, automatically renewable for a maximum of 99 years. The trial court found this provision to be unreasonable as to the time of restraint citing *Shirk v. Loftis Bros. & Co.,* 148 Ga. 500 (97 SE 66) (1895); *Aladdin, Inc. v. Krasnoff,* 214 Ga. 519 (105 SE2d 730) (1958). We find this determination unnecessary to our decision in this case.

A covenant not to compete contained in the sale of a business, which restriction is within a reasonable space of territory, need not be limited as to time. *Kutash v. Gluckman,* 193 Ga. 805 (20 SE2d 128) (1942). The restriction in this case would prohibit appellees from competing in any state anywhere in the United States in which a franchise had been granted under the distributorship agreement. This provision of the covenant is overly broad and uncertain, rendering the entire covenant void on public policy grounds. *WAKE Broadcasters v. Crawford,* 215 Ga. 862 (114 SE2d 26) (1960); *Taylor Freezer Sales Co. v. Sweden Freezer. &c. Corp.,* 224 Ga. 160 (160 SE2d 356) (1968); *Ellison v. Labor Pool of America,* 228 Ga. 147 (184 SE2d 572) (1971); *Rita Personnel Services International v. Kot,* 229 Ga. 314 (191 SE2d 79) (1972).

We find the provision in question is also unreasonable as to the nature of the business activities proscribed in that the publication sought to be restricted is not unique, nor is it a national publication such that it would require broad territorial protection. Therefore, the restrictive covenant is unreasonable as to the nature of the business activities proscribed.

Under the law of Georgia, covenants in restraint of trade may be enforced if they are reasonable as to time and place and are not overly broad in the activities proscribed, taking into consideration the interests of the individuals and commercial concerns as well as the public policy in promoting competition. A rule of reason will be applied by the courts in reviewing such contracts.

*Durham v. Stand-By-Labor,* 230 Ga. 558 (198 SE2d 145) (1973). If any one provision of a covenant not to compete is found to be unenforceable, the entire covenant will be struck down. *Rita Personnel Services International v. Kot,* supra. We find the covenant in restraint of trade in this case, when read in its entirety, to be overly broad and unenforceable in Georgia. The trial court was correct in refusing to grant appellant's motion for injunctive relief.

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 18, 1978 —. DECIDED JANUARY 5, 1979.

*Pleger, Duderwicz & Prince, Gary L. Pleger,* for appellant.

*John R. Laseter,* for appellees.